POSTED ON WEBSITE
<u>NOT FOR PUBLICATION</u>

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

| | |
|---|---|
| In re | ) Case No. 19-13374-B-7 |
| | ) |
| **KENNETH RAY HUDSON,** | ) |
| | ) |
| Debtor. | ) |
| | ) |
| ———————————————— | ) |
| | ) |
| MICHELLE BROWN | ) Adv. Proceeding No. 19-1128-B |
| | ) |
| Plaintiff, | ) DCN: GEG-2 |
| | ) |
| | ) |
| v. | ) |
| | ) |
| KENNETH RAY HUDSON, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| ———————————————— | ) |

**RULING ON MOTION FOR SUMMARY JUDGMENT**

**Before:  René Lastreto II, Bankruptcy Judge**

————————————

Glen E. Gates, GATES LAW GROUP, Fresno, CA, for Michelle Brown, Plaintiff.

Ahren A. Tiller, BLC Law Center, APC, San Diego, CA, for Kenneth Hudson, Defendant.

————————————

RENÉ LASTRETO II, Bankruptcy Judge:

<u>INTRODUCTION</u>

Michelle Brown ("Plaintiff") moves for summary judgment that the debts owed to her by Debtor Kenneth Ray Hudson

("Defendant") are non-dischargeable under 11 U.S.C. § 523(a)(2).[1] Under the issue preclusion doctrine, Plaintiff seeks judgment (1) determining that Defendant owes Plaintiff the judgment sum of $47,041.18; (2) determining that the debt owed by Defendant is non-dischargeable in his chapter 7 bankruptcy case; (3) awarding costs and fees, including attorney fees; and (4) for such other and further relief as deemed just and proper. Doc. #108.

Defendant timely opposed on the basis that the record fails to establish or allocate damages for fraud versus Plaintiff's other dischargeable causes of action, and therefore the motion should be denied. Doc. #124. Alternatively, if the court must enter a judgment against Defendant due to issue preclusion, Defendant argues that Plaintiff is not entitled to additional attorney fees under Cal. Civ. Code ("C.C.C.") § 1717 because these proceedings are not "on a contract." *Id.*

Plaintiff replied asserting that Defendant provided no evidence and ignores the state trial court's thorough judgment as to the third cause of action for fraud, and thus under issue preclusion, the motion should be granted.

This Motion for Summary Judgment was filed on 42 days' notice as required by LBR 7056-1 and in conformance with Rule 7056 and Civil Rule 56. This matter was originally scheduled to be heard on May 26, 2021. Doc. #130. The court required additional briefing on the issue of recoverability of attorney

---

[1] Unless otherwise indicated, references to "LBR" will be to the Local Rules of Practice for the United States Bankruptcy Court, Eastern District of California; "Rule" will be to the Federal Rules of Bankruptcy Procedure; "Civil Rule" will be to the Federal Rules of Civil Procedure; and all chapter and section references will be to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

fees and ordered the parties to simultaneously submit, file, and serve briefs not later than June 16, 2021. *Id.*

Both parties timely filed supplemental briefs on June 16, 2021. Docs. #135; #137.

This motion will be GRANTED as to Plaintiff's § 523(a)(2)(A) cause of action, including attorney fees as awarded in the underlying judgment. Further, the motion will be GRANTED as to additional attorney fees incurred while prosecuting this action.

<u>BACKGROUND</u>

Kern Bluff Resources, LLC ("KBR") was formed by Defendant in 2011 to invest in and own real estate, including mineral, oil, and gas resources. Doc. #102. Plaintiff was then counsel for Defendant and KBR. While representing Defendant and KBR, Plaintiff acquired 2 million shares of KBR units and a 4.1667% interest in mineral rights. Doc. #125, ¶¶ 1-5.

In 2014, a dispute arose. Plaintiff resigned as counsel for KBR. Defendant sued Plaintiff in Kern County on April 11, 2014, Case No. S-1500-CV-281744. Four months later, after mediation, the parties stipulated to resolve the Kern County litigation. *Id.*, ¶¶ 15-16. All parties signed a final, binding settlement agreement on October 14, 2014 ("Settlement Agreement"). *Id.*, ¶ 21. The Settlement Agreement provided that Defendant, individually and as trustee of the Hudson Family Trust, the Hudson Family Trust, and KBR would pay Plaintiff $10,000 on or before December 31, 2014. In return, Plaintiff would release all

claims and transfer Plaintiff's mineral rights and 1.1 million KBR units to Defendant. *Id.*, ¶¶ 24-24.

Plaintiff performed the Settlement Agreement and delivered a signed and notarized transfer and reconveyance of membership interest and mineral rights in favor of Defendant. After the transfer of 1.1 million KBR units to Defendant, Plaintiff was left with 900,000 remaining KBR units. *Id.*, ¶ 24. On November 11, 2014, Plaintiff quitclaimed her 4.1667% interest in mineral rights to Defendant. *Id.*, ¶ 26. Defendant dismissed the Kern County action with prejudice on December 1, 2014, causing the state court to lose jurisdiction to enforce the settlement pursuant to Cal. Civ. Proc. ("C.C.P.") Code § 664.6. *Ibid.*

On December 18, 2014, Plaintiff sought assurances that the $10,000 payment would be made on or before December 31, 2014. *Id.*, ¶ 27. On January 5, 2015, Defendant's attorney in the state court action responded, "My client is working on it. By the end of the month (sooner if a capital event happens first). She is first on the list."[2] *Id.*, ¶ 28; Doc. #115, Ex. 45.

On or about July 31, 2015, Citadel Corporation, Inc., a third party and publicly traded oil and gas company, closed escrow and purchased KBR's assets for a purchase price of $2

---

[2] The parties dispute whether Defendant had intention to pay the $10,000 at this time. Doc. #125, ¶ 29. Plaintiff claims that Defendant did not intend to pay the $10,000, evidenced by his recording of the reconveyance to the mineral rights on November 11, 2014, allegedly in violation of the Settlement Agreement, *Id.*, ¶ 31. Defendant claims these statements are false, that KBR owed the debt and he intended KBR to pay Plaintiff, but there was not any money available. Defendant contends he did not personally owe Plaintiff anything. *Id.*, ¶¶ 30-31; Doc. #126, ¶ 14.

million as well as 6 million shares in Citadel, and KBR retained an overriding royalty.[3] Doc. #125, ¶ 33.

In September 2015, after learning escrow closed on the Citadel sale, Plaintiff demanded payment of the $10,000 and delivery of the promised documents in the Settlement Agreement.[4] *Id.*, ¶ 34.

July 29, 2016, Plaintiff learned that Defendant, his wife, and his son had been removed from KBR's management by Order of the Court in a consolidated action in San Diego County Superior Court, Case No. 37-2015-00014099 ("Consolidated Investor Action"), which was brought by investors and KBR's new management against Defendant, his wife, and son. *Id.*, ¶ 35; *see also* Doc. #115, Ex. 48. The court found, "There is a sufficient showing of a likelihood of prevailing on the claim of breach of fiduciary duty." *Id.*, at 2. Defendant testified under oath at his deposition taken in the Consolidated Investor Action that the value of the mineral rights was never determined. Doc. #125, ¶ 40.

Not having received the consideration under the Settlement Agreement, Plaintiff filed an action for breach of contract, common counts, and fraud in the San Diego Superior Court Case No. 37-2017-00037943-CL-CO-CTL ("San Diego Action") against

---

[3] Defendant claims that Plaintiff was listed on the accounts payable list included in the sale of KBR assets to Citadel Corporation. Doc. #126, ¶ 16. Plaintiff claims that she was not notified of the sale. Doc. #110, ¶ 22.

[4] Plaintiff claims that the new KBR board and accountant notified investors they were having difficulty reconciling the members' respective ownership interest in KBR and tracing missing funds from the sale of KBR assets to Citadel as a result of Defendant's mismanagement of KBR. Doc. #125, ¶ 36. Defendant insists that the sale documents identify where every dollar went. Doc. #125, ¶ 17.

Defendant, individually and as trustee of the Hudson Family Trust, the Hudson Family Trust, and KBR. *Id.*, ¶ 41 on October 12, 2017. The complaint sought rescission of a portion of the settlement agreement requiring transfer of 1.1 million KBR membership units as well as the transfer of the 4.1667% of mineral rights in the Kern Bluff oil field in exchange for the promise to pay $10,000 and full disclosure of KBR's books and records. *Id.*, ¶ 42; Doc. #117, RJN-1. Plaintiff requested the sum of $8,813.21 as and for restitution and damages for royalties that were received by Defendant because of his alleged fraud against Plaintiff.[5] *Ibid.*; Doc. #125, ¶ 43.

Plaintiff sought rescission of the portion of the Settlement Agreement based on Defendant's false promise to pay Plaintiff $10,000 and produce books and records of KBR. *Id.*, ¶ 45. Provisions including mutual waiver and release were retained. *Ibid.* Plaintiff also sought an award of punitive damages, but this count was dismissed on April 27, 2018. Doc. #126, Ex. C.

Defendant was personally served with Plaintiff's summons and complaint on January 23, 2018. Doc. #125, ¶ 46. Defendant did not respond to the complaint and his default was entered on April 27, 2018. Doc. #110. On May 30, 2018, Defendant appeared *ex parte* in the San Diego Action and requested the court set aside the default. Doc. #125, ¶ 47. The court denied the

---

[5] Plaintiff contends that the $8,813.21 was attributable to royalty payments due Plaintiff but received by Defendant between 2015 and 2018. Doc. #125, ¶ 44. Defendant insists this is not possible, and that if Plaintiff were owed royalty of .04%, then less than $500 would be owed plaintiff for that period of time. Doc. #125, ¶ 21.

request, instructed Defendant to file a noticed motion, with an answer, and retain legal counsel. *Ibid.*

Defendant's motion to set aside the default was heard on July 11, 2018. *Id.*, ¶ 48. Defendant appeared and was permitted to present testimony and evidence in support of his motion to set aside the entry of Default. *Ibid.* Defendant did not file an answer and the motion was denied. *Ibid.* In denying the motion, the court found that "[t]he neglect exhibited by [Defendant] in this circumstance was of the inexcusable variety. He was fully aware he had been sued and simply failed to do what the summons clearly requires: to file a responsive pleading within 30 days." *Ibid.*

Plaintiff's application for Default Judgment (prove up) was heard November 9, 2018. *Id.*, ¶ 49. The court advised it had read everything, including all 87 Exhibits, the Plaintiff's declaration, the declarations of Andrew Servais, Jeffrey Coleman, and Sharonrose Cannistraci. *Ibid.* At the conclusion of the hearing, the court ruled that Defendant's promise to pay $10,000 was a false promise made without any intention to perform, that Plaintiff relied on Defendant's false promise to her detriment and that the false promise was a substantial factor in causing Plaintiff's harm including the loss of mineral rights, the KBR units and royalties on the mineral rights, and violation of her right to inspect KBR books and records. *Ibid.*; Doc. #117, RJN-2. The court's judgment was based on Plaintiff's testimony, other evidence, and written declaration. *Ibid.*

The court specifically found that Defendant's false promises were made to induce Plaintiff to sign the mediated

agreement and the final October 15, 2014 Settlement Agreement. The agreements included Plaintiff's executed promise to sell, transfer and reconvey Plaintiff's 1.1 million KBR membership units, and to sign a mineral, gas, and oil quitclaim deed giving up Plaintiff's interests in the mineral rights. *Ibid.* The court found that the transfer and reconveyance of the KBR units and mineral rights from Plaintiff to Defendant was induced by Defendant's false promise and made without Defendant intending to pay for the units, mineral rights, or produce the promised KBR books and records. *Ibid.*

The court granted partial rescission of the October 15, 2014 Settlement Agreement and rescinded Paragraphs 1(a) through 1(c) regarding the sale and reconveyance of the transactions of the membership units and mineral rights, and left the mutual waiver and other terms and conditions intact and ordered restitution of the consideration Plaintiff paid Defendant in connection with the Settlement Agreement, specifically, reconveyance of the mineral rights, revocation of the sale of membership and restoration of Plaintiff's 1.1 million KBR membership units. *Ibid.*

Plaintiff separately settled her claims against KBR's new managing member on May 13, 2018. Doc. #126, Ex. A.

On February 8, 2019, Plaintiff's noticed motion for attorney's fees and costs following entry of the Default Judgment was heard. Doc. #125, ¶ 53. Among the evidence considered by the court was the declaration of Sharonrose Cannistraci, one of Plaintiff's attorneys. Doc. #118, RJN-5. Ms. Cannistraci assisted in drafting the Settlement Agreement, which

included the KBR Membership Operating Agreement ("Operating Agreement") as an exhibit by reference. Per the Operating Agreement, Ms. Cannistraci testified that her fees were covered under Paragraph 13.18, an attorney fee clause for recovery by the prevailing party in an action on dispute among KBR members. Doc. #114, Ex. 39, at 39, ¶ 13.18. The court found Plaintiff was the prevailing party, and the attorney fees requested were fair and reasonable taking into consideration the high burden of proof required to establish fraud. *Ibid.* The court awarded attorney fees in the amount of $34,000 and costs that were added to the Original Judgment and filed as the Amended Judgment. Doc. #117, RJN-2.

March 29, 2019, Defendant and his spouse, Elaine Greco Hudson, appeared in court for an examination. Doc. #125, ¶ 54. Defendant advised that he was not bound by the judgment because he had transferred his mineral rights to a revocable trust he held with his spouse. Defendant also admitted, and his spouse concurred, that Defendant had the power to execute a quitclaim transferring the mineral rights to Plaintiff. *Ibid.* Defendant executed the quitclaim deeds at the examination.[6] *Id.*, ¶ 55.

A few days later on April 2, 2019, Ms. Greco left a voice message for Plaintiff advising she would not quitclaim the interest in the mineral rights unless Plaintiff released her claims. *Id.*, ¶ 56. The next day, Defendant emailed Jeffrey

---

[6] Plaintiff contends that Defendant's wife, Elaine Hudson, left the court before Plaintiff could obtain her signature on the quitclaim deed and she did not return. Doc. #125, ¶ 55. Defendant declares that his wife did return to court but was not required to sign anything because the mineral rights belonged solely to him. Doc. #126, ¶ 22. Defendant states that he was entitled to remove the mineral rights from the family trust per the trust agreement. *Ibid.*

Coleman, attorney for Citadel Exploration and instructed him, "Until the issue of the quitclaim is resolved please continue to pay our royalty check to Ken and Elaine Family Trust . . ." *Ibid.* Citadel then refused to pay Plaintiff any royalty payments. *Ibid.*

At the May 5, 2019 hearing on the motion to add Ms. Greco as an alter-ego judgment debtor, the state court was notified of Defendant's bankruptcy filing. *Id.*, ¶ 58. Defendant's chapter 13 proceeding was dismissed by the bankruptcy court on July 23, 2019. *Id.*, ¶ 59. Plaintiff reset the hearing on the motion to add Ms. Greco as co-debtor for August 7, 2019, but at the hearing the state court was notified of Defendant's chapter 7 filing. *Ibid.*

<u>DISCUSSION</u>

I.

Civil Rule 56 applies in adversary proceedings. Rule 7056. The moving party has the burden of demonstrating that there is the "absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); Civil Rule 56(c). A "genuine issue" exists where "based on the evidence presented, a fair-minded jury could return a verdict in favor of a non-moving party on the issue in question." *In re Tills*, 419 B.R. 444, 449 (Bankr. S.D. Cal. 2009). An issue is genuine if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party and a dispute is "material" only if it could affect the outcome of the case under the

governing law. *Barboza v. New Form, Inc. (In re Barboza),* 545 F.3d 702, 707 (9th Cir. 2008).

The court must view all the evidence in a summary judgment motion in the light most favorable to the nonmoving party. *Id.*, citing *Cty. of Tuolumne v. Sonora Cmty. Hosp.,* 236 F. 3d 1148, 1154 (9th Cir. 2001); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A court generally cannot grant summary judgment based on its assessment of the credibility of the evidence presented. *Barboza*, 545 F.3d at 707 quoting *Agosto v. INS*, 436 U.S. 748, 756 (1978). "At the summary judgment stage, the judge's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

To survive a motion for summary judgment, the non-moving party must show specific facts that demonstrate a genuine issue of material fact remains for trial. *Celotex Corp.*, 477 U.S. at 324. The non-moving party cannot rest upon mere allegations or denials in the pleadings. *Anderson*, 477 U.S. at 248.

### A.

Plaintiff contends here that the San Diego state court judgment conclusively requires the bankruptcy court to determine that Defendant's debt to Plaintiff is non-dischargeable under the issue preclusion doctrine (collateral estoppel) and 11 U.S.C. § 523(a)(2)(A) (money obtained by false pretenses, false representations, or actual fraud). Doc. #112. Plaintiff argues that there is no genuine issue of material fact that collateral

estoppel and issue preclusion apply to the San Diego state court judgment. On this basis, Plaintiff asks that the judgment be given a preclusive effect on these proceedings.

Defendant does not dispute that the state court entered a judgment for $47,041.18 and attached findings of fact that would support a finding of fraud under California law, but insists that nothing in the record establishes the $47,041.18 judgment was entered as result of Plaintiff's third cause of action for fraud, rather than the two causes of action for breach of contract or common counts. Doc. #124.

Defendant argues there are remaining factual claims in Plaintiff's motion that are clearly disputed factual issues, which cannot be determined by a motion for summary judgment. These factual issues include whether Defendant had intent to deceive and whether Defendant had the power to pay Plaintiff, since he was no longer the CEO of KBR when the alleged non-payment occurred.

II.

Collateral estoppel is applicable to proceedings brought under § 523(a) for exception of discharge. *Grogan v. Garner*, 498 U.S. 279, 284 n.11 (1991). Under 28 U.S.C. § 1738, the preclusive effect of a state court judgment is determined by the law of the state in which the judgment was issued. *Gayden v. Nourbakhsh (In re Nourbakhsh)*, 67 F.3d 798, 800 (9th Cir. 1995); *see also Marrese v. Am. Acad. Of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985). "Collateral estoppel precludes re-litigation of issues argued and decided in prior proceedings." *Lucido v.*

*Superior Court*, 51 Cal. 3d 335, 341 (1990). Issue preclusion applies if five "threshold requirements" are met:

> (1) The judgment is final;
> (2) The issues are identical;
> (3) The proceeding was actually litigated;
> (4) The issues were necessarily decided in favor of the former proceeding; and
> (5) The parties are the same or are in privity.

*Id.*, at 1225; *see also Harmon v. Kobrin (In re Harmon)*, 250 F.3d 1240, 1245 (9th Cir. 2001). State law collateral estoppel principals apply. *Ibid.* The party asserting issue preclusion has the burden of proving a record sufficient to reveal the controlling facts and pinpoint the exact issues litigated in the prior action. *In re Lambert*, 233 F. App'x 598, 599 (9th Cir. 2007).

In California, a default judgment is given issue preclusive effect if the defendant had actual knowledge of the litigation and had an opportunity to participate and the issues were actually litigated. *In re Kaut*, 596 B.R. 698, 703 (Bankr. E.D. Cal. 2019); *Cal-Micro Inc. v. Cantrell*, 329 F.3d 119 (9th Cir. 2003).

Even after the five threshold factors are met, application of issue preclusion is discretionary. *Lopez v. Emerg. Serv. Restoration, Inc. (In re Lopez)*, 367 B.R. 99, 103, 107–08 (B.A.P. 9th Cir. 2007). In exercising that discretion, this court needs to consider the circumstances of the particular case and whether application of the doctrine is fair and consistent with the policies underlying it. *Baldwin v. Kilpatrick (In re Baldwin)*, 249 F.3d 912, 919-20 (9th Cir. 2001).

A.

Plaintiff argues that collateral estoppel applies. Doc. #124. The state court judgment is final and binding. Defendant's opportunity to appeal has lapsed. Plaintiff insists the issues in the state court action are identical to the issues in Plaintiff's § 523(a)(2)(A) action. The issues were actually litigated because they were raised in the pleadings and submitted for determination prior to the entry of judgment on November 9, 2018. The issues were decided in the proceeding and the parties are the same as in the state court judgment.

Defendant disputes each prong except the fifth of the collateral estoppel test but provides little evidence for those contentions. Doc. #124.

The court finds that the principals of collateral estoppel apply in this case as set forth below.

1.

The San Diego County Superior Court issued a judgment by default on November 9, 2018. Doc. #117, RJN-2. This judgment was amended on February 8, 2019. *Ibid.* The amended judgment is final, binding, and on the merits.

2.

The issues decided in the state court proceeding are identical to the elements of § 523(a)(2)(A).

11 U.S.C. § 523(a)(2)(A) excepts from discharge "any debt . . . for money, property, services, or an extension, renewal, or refinance of credit, to the extent obtained by . . . false

pretenses, a false representation, or actual fraud[.]" To establish that a fraud judgment is non-dischargeable under § 523(a)(2)(A) based on collateral estoppel, the following statutory elements must be met:

> (1) misrepresentation, fraudulent omission or deceptive conduct by the debtor; (2) knowledge of the falsity or deceptiveness of his statement or conduct; (3) an intent to deceive; (4) justifiable reliance by the creditor on the debtor's statement or conduct; and (5) damage to the creditor proximately caused by its reliance on the debtor's statement or conduct.

*In re Harmon*, 250 F.3d at 1246. The court may rely on a preclusive effect of an existing state court judgment to grant summary judgment. *Plyam v. Precision Dev., LLC (In re Plyam)*, 530 B.R. 456, 462 (B.A.P. 9th Cir. 2015). "A promise made without any intention of performing it constitutes fraud." *Union Flower Mkt., Ltd. v. S. Cal. Flower Mkt., Inc.*, 10 Cal. 2d 671, 676 (1938).

> "Promissory fraud" is a subspecies of the action for fraud and deceit. A promise to do something necessarily implies the intention to perform; hence, where a promise is made without such intention, there is an implied misrepresentation of fact that may be actionable fraud.

*Lazar v. Superior Court*, 12 Cal. 4th 631 (1996) citing *Union Flower Mkt.*, 10 Cal. 2d at 675.

The elements of § 523(a)(2)(A) "mirror the elements of common law fraud" and match those for actual fraud under California law. *Tobin v. Sans Souci Ltd. Pshp. (In re Tobin)*, 258 B.R. 199 (B.A.P. 9th Cir. 2001) (internal citations omitted) quoting *Youngie v. Gonya (In re Younie)*, 211 B.R. 367, 373-74 (B.A.P. 9th Cir. 1997), *aff'd*, 163 F.3d 609 (9th Cir. 1998).

a.

Plaintiff contends that all of elements for fraud under California law are present here. The state court found that:

(1) Defendant, individually and as trustee of the Hudson Family Trust, the Hudson Family Trust, and KBR, deceived and defrauded Plaintiff to enter into and rely on the Settlement Agreement. The false promise included the unconditional promise to pay $10,000 to Plaintiff by December 31, 2015 in exchange for Plaintiff's conveyance of mineral rights and KBR units, as well as the promise to allow Plaintiff to inspect KBR books and records under the control of Defendant.

(2) Defendant did not intend to perform the false promises at the time the promises were made and therefore had knowledge of the falsity. The state court noted that Defendant had never performed either promise to date.

(3) Defendant made the false promises with intent to induce Plaintiff to sign over her mineral rights and KBR units, which she did. The court found that the promises were meant to induce the transfer of the KBR units and mineral rights and such transfer would not have occurred but for Defendant's false promise.

(4) Plaintiff justifiably relied on Defendant's false promises to her detriment. Plaintiff partially performed by conveying her mineral interests and KBR units to Defendant.

(5) The court found that the promises were a substantial factor in causing Plaintiff's harm, including the loss of mineral rights, KBR units, and royalties from her mineral rights.

Doc. #117, RJN-2. The court based its decision to partially rescind the Settlement Agreement and transfer and conveyance of Plaintiff's interests on Defendant's false promise. The decision to rescind resulted in the retransfer and reconveyance of the mineral rights and the KBR units.

The state court found that Plaintiff would suffer serious harm unless the court granted the rescission and cancellation of the mineral, gas, and oil quitclaim deed and the reconveyance of the units.

b.

Defendant argues that the state court's findings do not specify that the entire judgment was for the fraud count as opposed to breach of contract or other counts. Defendant argues that the state court's judgment is without preclusive effect as to § 523(a)(2)(A) because it does not include any express findings of fact or conclusion that relates to the $47,041.18 amended judgment, as opposed to the other dischargeable counts for breach of contract or common counts. Doc. #124. Nothing in the state court's findings of fact and conclusions of law identify the basis on which it determined the amount owed, or that facts alleged in the fraud claim were the cause of the $47,041.18 damages awarded, says Defendant. The order does not cite a specific finding that all of the elements of the fraud claim asserted by Plaintiff in the complaint were the cause of the damages awarded in the judgment. On this basis, Defendant argues that the judgment does not set forth a clear record for the judgment to have a preclusive effect that the fraud claim was necessarily decided by the state court.

In response, Plaintiff contends the state court judgment specifies express findings of fact that the judgment for fraud was based solely on the third cause of action in the complaint. Doc. #127. The judgment was found specifically against Defendant

17

individually, and other defendants. The rescission was specified and set forth with particularity, based on fraud of the Defendant, and that as a result of that fraud the requirements of the underlying agreement were null and void and had no force or effect. The state court does not mention the other two causes of action because it did not award any damages or make any findings on the breach of contract or common counts. The damages awarded in the San Diego Action rest on the third cause of action for rescission and restitution as result of Defendant's fraud.

c.

This court disagrees with Defendant's assertion that the state court judgment does not provide express findings of fact that the judgment amount was based on the third case of action for fraud in the complaint. If the state court made a breach of contract finding, it would have been inconsistent with the rescission and restitution remedies based on fraud.

The state court found that Defendant (1) made false promises with no intention to perform; (2) had knowledge of the falsity and deceptiveness of the statement and conduct at the time the statements were made; (3) made the statements to induce Plaintiff to enter into the Settlement Agreement and willfully failed to perform; (4) Plaintiff was deceived by Defendant's promises and justifiably relied on his statements and conduct; and (5) Plaintiff suffered damage as result of the fraud. This is sufficient to show that the issues litigated in state court

for false promise without intent to perform are the same as those for § 523(a)(2)(A).

3.

The issues were "actually" litigated in the state court proceeding. *Newsom v. Moore (In re Moore)*, 186 B.R. 962, 971 (1985) ("[A]n issue is actually litigated when it is properly raised in the pleadings, or otherwise, and is submitted for determination, and is determined, noting that a determination may be based on a failure of proof.").

There is no dispute the fraud claim was properly raised in the pleadings in the San Diego Action.

Plaintiff argues that the San Diego Superior Court found the issue to be making a promise without intent to perform and was actually litigated.

Defendant does not dispute that he was personally served with Plaintiff's summons and complaint on January 23, 2018. Doc. #125, ¶ 46. Defendant appeared *ex parte* in San Diego and requested the court to set aside his default prior to the entry of final judgment. *Id.*, ¶ 47. The court denied that request and instructed Defendant to retain counsel and file a noticed motion with an answer. *Ibid.*

Defendant's motion to set aside the default was heard on July 11, 2018, where he appeared and was permitted to present testimony and evidence in support of his motion to set aside the entry of default. *Id.*, ¶ 48. Defendant did not file an answer and his motion was denied because "[t]he neglect exhibited by [Defendant] in this circumstance was of the inexcusable variety.

He was fully aware he had been sued and simply failed to do what the summons clearly required: to file a responsive pleading within 30 days." *Ibid.*

4.

This court finds that the issues in the state court proceeding were necessarily decided. The state court proceeding was finalized on the merits. Defendant appeared and was heard in his attempt to set aside the entry of default judgment. *Ibid.* The court issued a final judgment with findings of fact specifically tailored to Plaintiff's fraud complaint. *Ibid.*

5.

The parties before this court are the same parties from the state court litigation. The party against whom issue preclusion is sought to be enforced is the same as in the underlying state court litigation. Defendant does not dispute this contention. Doc. #124.

B.

Defendant argues that because he disputed the facts in response to the statement of undisputed facts, there is a dispute and thus there are triable material issues of fact. But Defendant fails to provide any supporting evidence that the denials to Plaintiff's statement of undisputed facts warrant denial of this motion. Doc. #125. Some facts are in dispute, but Defendant concedes that (1) the state court litigation occurred; (2) he was properly served, (3) he appeared and prosecuted a

motion to set aside the default, which was denied; (4) the state court issued a final judgment against him. That Defendant now disputes some facts is not relevant since the court has reviewed the state court record.

Defendant points to other factual issues warranting denial of this motion, such as whether Defendant had an intent to deceive or whether he had the power to pay Plaintiff, as he was no longer the CEO of KBR. Doc. #124. Despite his denial, the state court explicitly found that he had an intent to deceive Plaintiff to induce her into signing over her mineral rights and KBR units. Defendant is no longer the CEO of KBR. He was removed from management prior to the filing of the San Diego Action. Throughout the entire San Diego Action, Defendant was not the CEO and did not have the power to authorize payment from KBR to Plaintiff. The state court disagreed with what Defendant now claims are material factual disputes.

And even though the state court action was a default judgment, Defendant still appeared seeking to set aside the default. He was instructed to file an answer. He did not.

Defendant has failed to support his contention that collateral estoppel should not apply here. The state court's judgment is clear and Defendant's disputed facts, even when viewed in the light most favorable to him, do not negate the effect of the state court's findings of fact. LBR 7056-1(b) provides:

> Any party opposing a motion for summary judgment or partial summary judgment shall reproduce the itemized facts in the Statement of Undisputed Facts and admit those facts which are undisputed and deny those facts

> which are disputed, including with each such denial a
> citation to the particular portions of any pleading,
> affidavit, deposition, interrogatory, answer,
> admission, or other document relied upon in support of
> that denial.

Defendant's denials are not supported by facts. Viewing the evidence in the light most favorable to Defendant still does not negate the San Diego Superior Court's judgment and findings of fact in favor of Plaintiff.

### C.

"Even when the five threshold criteria for issue preclusion are met, a bankruptcy court must conduct an 'inquiry into whether imposition of issue preclusion in the particular setting would be fair and consistent with sound public policy' before applying issue preclusion." *Delannoy v. Woodlan Colonial, L.P. (In re Delannoy)*, 615 B.R. 572, 582 (B.A.P. 9th Cir. 2020 (quoting *Khaligh v. Hadaegh (In re Khaligh)*, 338 B.R. 817, 824-25 (B.A.P. 9th Cir. 2006), *aff'd* 506 F.3d 956 (9th Cir. 2007)). "Three fundamental policies should be considered: 'preservation of the integrity of the judicial system, promotion of judicial economy, and protection of litigants from harassment by vexatious litigation.'" *Delannoy*, 615 B.R. at 582 (quoting *Lucido v. Superior Court*, 51 Cal.3d at 343); *see also Lopez v. Emergency Serv. Restoration, Inc. (In re Lopez)*, 367 B.R. 99, 103 (B.A.P. 9th Cir. 2007).

///
///
///

1.

The first inquiry is into the integrity of the judicial system and whether application of collateral estoppel would create the possibility of inconsistent verdicts. *Baldwin*, 249 F.3d at 920 citing *Lucido*, 51 Cal.3d at 343-44. Here, as in *Baldwin*, "the state court was fully capable of adjudicating the issue subsequently presented to the bankruptcy court[.]" *Ibid.* "[R]elitigation in bankruptcy court of the issue decided by the state court would conflict with the principle of federalism that underlies the Full Faith and Credit Act" and "the public's confidence in the state judicial system would be undermined[.]" *Ibid.* citing *Marrese*, 470 U.S. at 380.

Moreover, Defendant was adequately served the summons and complaint in the San Diego Action. Defendant appeared *ex parte* before the San Diego court seeking to turn over the previous default judgment. He was instructed to file a noticed motion, file an answer, and retain counsel. Later, his motion was denied because he had not filed an answer as instructed. The state court described his neglect as of "the inexcusable variety" because he knew he was being sued and did nothing. Defendant was given multiple opportunities to defend the action before the final judgment was entered. Defendant attempts to re-litigate the merits of the state court action here, which, if allowed and if successful, could compromise the integrity of the judicial system *vis-à-vis* inconsistent verdicts. This factor weighs in favor of application of collateral estoppel.

///

///

## 2.

Second, we consider whether application of collateral estoppel would promote judicial economy. *Lucido*, 51 Cal.3d at 350.

The record on this motion is over 500 pages. The San Diego Superior Court considered 87 exhibits prior to issuing its judgment. Doc. #125, ¶ 49. The state court copiously expended judicial resources in rendering its verdict, including adjudication of Defendant's motion to set aside the default judgment. Re-litigating in bankruptcy court these issues that have already been fully and finally determined in state court favors application of issue preclusion here. *See Baldwin*, 249 F.3d at 920 ("Relying on the state court's determination allows the bankruptcy court to conserve judicial resources.").

## 3.

Lastly, we consider whether application of collateral estoppel will protect the parties from vexatious litigation. *Ibid.* Defendant had a full and fair opportunity to litigate this claim before the state court. Defendant was properly served the summons and complaint and had notice of the lawsuit. Defendant appeared before the court on at least two occasions seeking to set aside the default judgment. He was unsuccessful. Defendant forfeited his right to defend himself without adequate justification. "The neglect exhibited by Defendant in this circumstance was of the inexcusable variety." Doc. #125, ¶ 48.

Plaintiff already successfully prosecuted her state court lawsuit years ago. It would be unfair to now require her to re-

litigate those same claims years later. *See Baldwin*, 249 F.3d at 920 ("It would be unfair to [creditor] to require him to relitigate before the bankruptcy court what was properly decided by the state court.").

D.

Plaintiff's motion for summary judgment will be GRANTED as to the preclusive effect of the state court judgment.

The San Diego County Superior Court's amended judgment awarding $8,813.21 in damages, $997.26 in pre-judgment interest, $34,000.00 in attorney fees, and $3,230.71 in costs for a total of $47,041.18 will be deemed non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

III.

Next, we turn to the issue of whether Plaintiff is entitled to recover additional fees in prosecuting this non-dischargeability action. California law permits recovery fees under certain circumstances. While there is no general right to attorney fees, bankruptcy courts may award fees in § 523 actions when authorized by state law. *Travelers Cas. & Sur. Co. of Am. v. PG&E*, 549 U.S. 443, 451-52 (2007) ("[T]he 'basic federal rule' in bankruptcy is that state law governs the substance of claims."); *see also Cohen v. de la Cruz*, 523 U.S. 213, 223 (1998) ("In short, the text of § 523(a)(2)(A) . . . encompasses any liability arising from money, property, etc., that is fraudulently obtained, including treble damages, attorney's

fees, and other relief that may exceed the value obtained by the debtor.").

In non-dischargeability actions, the question for awarding attorney fees is "whether creditor plaintiff would be entitled to fees in state court for establishing those elements of the claim which the bankruptcy court finds support a conclusion of nondischargeability." *Kilborn v. Haun (In re Haun)*, 396 B.R. 522, 528 (Bankr. D. Idaho 2008).

California law offers two primary avenues for the recovery of attorney fees by a prevailing party:

1.    C.C.C. § 1717; and

2.    C.C.P. §§ 685.040 and 1021.


A.

C.C.C. § 1717 allows a party to recover attorney fees incurred in the litigation of a contract claim. *Redwood Theaters, Inc. v. Davison (In re Davison)*, 289 B.R. 716, 722 (B.A.P. 9th Cir. 2003) (C.C.C. § 1717 provides for attorney's fees in an "action on a contract") citing *Santisas v. Goodin*, 17 Cal. 4th 599, 615 (1998). For C.C.C. § 1717 to apply, (1) the action in which the fees are incurred must be an action "on a contract"; (2) the contract must contain a provision stating that attorney's fees incurred to enforce the contract shall be awarded either to one of the parties or to the prevailing party; and (3) the party seeking fees must be the party who "prevailed on the contract" meaning "the party who recovered a greater relief in the action on the contract." C.C.C. § 1717(b)(1); *see also Penrod v. AmeriCredit Fin. Servs. (In re Penrod)*, 802 F.3d

1084, 1087-88 (9th Cir. 2015) ("[A]n action is 'on a contract'
when a party seeks to enforce, or avoid enforcement of, the
provisions of the contract."); *cf. Bos. V. Bd. Of Trs.*, 818 F.3d
486, 489 (9th Cir. 2015) ("[W]e have previously held that a
nondischargeability action is 'on a contract' within section
1717 if 'the bankruptcy court needed to determine the
enforceability of the . . . agreement to determine
dischargeability.").

Plaintiff has the burden of showing that this action is
(1) an "action on a contract" and (2) this contract has a
prevailing party attorney's fee provision which is the basis of
the fraud claim in order for her to recover her attorney fees
incurred prosecuting this adversary proceeding. In determining
whether the proceeding was an action on a contract, courts may
look beyond the parties' pleadings. *Sea Win, Inc. v. Tran (In re
Tran)*, 301 B.R. 576, 584 (Bankr. S.D. Cal. 2003).

Whether this is an action on a contract turns on whether
the Settlement Agreement played an integral role in the non-
dischargeability action. *Heritage Ford v. Baroff (In re Baroff)*,
105 F.3d 439, 442 (9th Cir. 1997) (non-dischargeability action
"was an action on the contract because the document containing
the attorney's fee clause . . . played an integral role in the
proceedings.").

1.

Plaintiff contends that she is entitled to further attorney
fees for bringing this adversary proceeding. Doc. #135. In the
San Diego Action, Plaintiff argued that she had incurred fees of

$34,000.00 and that this amount sought was reasonable under the circumstances under C.C.C. § 1717 and Paragraph 13.18 of the Operating Agreement. The Superior Court awarded $34,000 to Plaintiff for the enforcement of the contract as reasonable attorney fees permitted under the contractual provisions of the KBR Operating Agreement Section 13.18, which covered the amount of time, effort, and energy in bringing the request to enter the default and the prove up hearing.

Plaintiff cites to *Cohen*, wherein the Supreme Court concluded under 11 U.S.C. § 523(a)(2)(A) that any liability arising from money or property that is fraudulently obtained, including treble damages, and any other relief that may exceed the value of what was received by the debtor. *Id.*, citing *Cohen*, 523 U.S. at 223. Here, Plaintiff argues that *Cohen* prevents discharge of all liability out of Defendant's conduct because she is able to recover fees outside of the bankruptcy court under state or federal law.

Plaintiff emphasizes the impact of the attorney fee provision in a contract under C.C.C. § 1717, which provides for attorney fees in contracts incurred to enforce the contract to be awarded to the prevailing party. The attorney fee provision at issue is broad enough to encompass a tort claim, Plaintiff insists. Doc. #135, citing *Santisas v. Goodin*, 17 Cal. 4th at 615, 622-23.

## 2.

Meanwhile, Defendant argues that Plaintiff is not entitled to any additional fees under C.C.C. § 1717. Although the

contract's terms could arguably be construed as broad enough to include tort claims as fraud, Defendant contends that these fees can only be awarded to a prevailing party in an "action on the contract." C.C.C. § 1717(a); *Seyed Shahram Hosseini v. Key Bank N.A. (In re Seyed Shahram Hosseini)*, 504 B.R. 558, 567 n.13 (B.A.P. 9th Cir. 2014) ("[C.C.C.] § 1717 is to be narrowly applied and is available to a party only if the dispute involves litigation of a contract claim.") citing *Santisas*, 17 Cal. 4th at 599. Thus, Defendant insists that attorney fees are only recoverable on a breach of contract claim, not a fraud claim.

Defendant cites Plaintiff's admission on the record that there is no legal or factual basis to award additional attorney fees for prosecuting the non-dischargeability action. The basis of Plaintiff's claim is that Defendant fraudulently misrepresented that he would pay $10,000 to Plaintiff in exchange for her 900,000 KBR units pursuant to the Settlement Agreement. Since the Settlement Agreement contains no provision for attorney fees, Defendant insists that Plaintiff is not entitled to any additional fees.

Although the San Diego Superior Court's judgment is based on the subject Settlement Agreement, there is no basis under C.C.C. § 1717 to award attorney fees for prosecuting this action because the Settlement Agreement was not an integral part in this non-dischargeability proceeding. Defendant urges the court to focus its analysis on the attorney fees provision in the Settlement Agreement, which is governed by California law and the only basis on which Plaintiff could be awarded fees. If the scope of that provision is broad enough to encompass a state

court action that has the same elements as a § 523(a)(2)(A)
claim for common law fraud, then Plaintiff is entitled to fees.
Doc. #124 citing *Turtle Rock Meadows Homeowners Ass'n v. Slyman
(In re Slyman)*, 234 F.3d 1081, 1083 (9th Cir. 2000).

However, since the Settlement Agreement is not an integral
part of this litigation, then the action is not on a contract
and Plaintiff is not entitled to fees under C.C.C. § 1717.
Plaintiff's state court fraud judgment was based on a false
promise to perform the actions contained in the Settlement
Agreement. Defendant claims the handwritten agreement and the
Settlement Agreement calling for Plaintiff to transfer her KBR
units in exchange for dismissal of the litigation and $10,000 is
the sole and only basis in the record for the fraud judgment.
And since the Settlement Agreement contained no prevailing party
attorney's fee provision, Plaintiff has failed to meet her
burden of establishing that this adversary proceeding is based
on a contract that has a prevailing party's attorney fee
provision. Defendant therefore asserts that the request for
attorney fees to prosecute this adversary proceeding should be
denied.

3.

The court agrees with Defendant that C.C.C. § 1717 does not
provide an avenue for Plaintiff's recovery of attorney fees.
Because the document containing the attorney fee clause did not
play an integral role in this adversary proceeding and this
court did not adjudicate the validity of the Settlement
Agreement, instead applying the principles of collateral

estoppel and issue preclusion, the fees for prosecuting the action were not "on a contract" for the purposes of C.C.C. § 1717. But Plaintiff is not without recourse.

                                    B.

     The second option for attorney fees lies in both C.C.P. §§ 685.040 and 1021. Both provide for recovery of attorney fees as allowable costs under C.C.P. §§ 1032 and 1033.5. C.C.P. § 1021 provides:

> Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counsels at law is left to the agreement, express or implied, of the parties; but to parties to actions or proceedings are entitled to their costs, as hereinafter provided.

C.C.P. § 1021 permits attorney fees by agreement between the parties and does not limit recovery of fees to actions on the contract. *Davison*, 289 B.R. at 724, citing *3250 Wilshire Boulevard Bldg. v. W.R. Grace & Co.*, 990 F.2d 487, 489 (9th Cir. 1993). Attorney fees for fraud claims may be recovered if the contract for which the fraud judgment is based so provides for the prevailing party to be awarded their attorney fees. "[S]ection 1021 allows 'the parties to agree that the prevailing party in litigation may recover attorney fees, whether the litigation sounds in contract or in tort.'" *Maynard v. BTI Group, Inc.*, 216 Cal. App. 4th 984, 991 (2013) quoting *Miske v. Coxeter*, 204 Cal. App. 4th 1249, 1259 (2012).

     If there is an attorney fee provision in the underlying agreement of the parties, the court must examine the language of the agreement to determine whether an award of fees is

warranted. *Davison*, 289 B.R. at 724, citing *3250 Wilshire Boulevard Bldg. v. W. R. Grace & Co.*, 990 F.2d 487, 489 (9th Cir. 1993); *In re KLAUSE*, 181 B.R. 487, 500 (Bankr. C.D. Cal. 1995).

　　　Meanwhile, C.C.P. § 685.040 provides:

> The judgment creditor is entitled to the reasonable and necessary costs of enforcing a judgment. Attorney's fees incurred in enforcing a judgment are not included in costs collectible under this title unless otherwise provided by law. Attorney's fees incurred in enforcing a judgment are included as costs collectible under this title if the underlying judgment includes an award of attorney's fees to the judgment creditor pursuant to subparagraph (A) of paragraph (10) of subdivision (a) of Section 1033.5.

C.C.P. § 685.040. C.C.P. § 1033.5(a)(10) permits attorney fees when authorized by contract, statute, or law.

> [T]here are two requirements before a motion for an award of post-judgment attorney fees may be awarded as costs: (1) the fees must have been incurred to "enforce" a judgment; and (2) the underlying judgment had to include an award for attorney fees pursuant to [C.C.P. § 1033.5(a)(10)(A)], which provides that attorney fees may be awarded when authorized by contract.

*Jaffe v. Pacelli*, 165 Cal. App. 4th 927, 935 (2008) (quoting *Berti v. Santa Barbara Beach Props.*, 145 Cal. App. 4th 70, 77 (2006)).

　　　"CCP § 685.040 addresses the 'problem unique to a claim for post-judgment fees in actions based on contract.'" *Tinajero v. Zavala (In re Tinajero)*, 2020 Bankr. LEXIS 2157, at *13 (B.A.P. 9th Cir. Aug. 4, 2020) (quoting *Jaffe*, 165 Cal. App. 4th at 934; *Berti*, 145 Cal. App. 4th at 77). C.C.P. § 685.040 entitles a

judgment creditor to post-judgment attorney fees incurred in enforcing a judgment "if the underlying judgment includes an award of attorney's fees to the judgment creditor pursuant to subparagraph (A) of paragraph (10) of subdivision (a) of Section 1033.5." C.C.P. § 685.040. C.C.P. § 1033.5(a)(10)(A) allows attorney fees as "costs" for the purposes of C.C.P. § 1032. Thus, post-judgment fees under § 685.040 is "not based on survival of the contract but is instead based on the award of attorney fees and costs in the trial judgment." *Jaffe*, 165 Cal. App. 4th at 935. Actions taken in bankruptcy proceedings may qualify as enforcement proceedings subject to C.C.P. § 685.040. *Jaffe*, 165 Cal. App. 4th at 938; *Chinese Yellow Pages Co. v. Chinese Overseas Mktg. Serv. Corp.*, 170 Cal. App. 4th 868, 888 (2008).

1.

Defendant acknowledges that the terms of the contract could potentially be construed to include fraud, but states that the contract explicitly references C.C.C. § 1717, which would still require litigation of the contract. Doc. #124. Defendant does not reference C.C.P. § 685.040, but does acknowledge C.C.P. § 1021. Doc. #137. However, Defendant focuses his argument on C.C.C. § 1717.

In his supplemental briefing, Defendant cites to *Fobian v. Western Farm Credit Bank (In re Fobian)*, 951 F.2d 1149, 1153 (9th Cir. 1991), whereby the Ninth Circuit refused to award attorney fees despite an express contractual provision because the substantive litigation raised federal bankruptcy law issues

rather than "basic contract enforcement questions." *Id.* at 1153. On this basis, the Ninth Circuit held that the creditor could not recover attorney fees under the contract absent bad faith or harassment. *Id.*, citing *Johnson v. Righetti (In re Johnson)*, 756 F.2d 738, 740-41 (9th Cir. 1985) (Ninth Circuit refused to award attorney fees under California law and a contractual provision, because the underlying stay litigation raised federal statutory issues rather than issues relating to the contract).

However, reliance on *Fobian* is misplaced. The U.S. Supreme Court effectively overruled *Fobian*, stating that "[t]he *Fobian* rule finds no support in the Bankruptcy Code, either in § 502 or elsewhere." *Travelers*, 549 U.S. 443 (concluding that the Court of Appeals erred applying the *Fobian* rule to disallow a claim based on the fact that the fees were incurred litigating issues of bankruptcy law); *see also Penrod*, 802 F.3d at 1089 ("The Supreme Court squarely rejected that [*Fobian*] view in *Travelers*.").

Nonetheless, Defendant implies that Plaintiff cannot recover fees incurred while prosecuting this non-dischargeability action because federal statutory issues rather than contractual issues predominate. Defendant reiterates his argument that the Settlement Agreement contained no attorney fee provision before reasserting Plaintiff's counsel's admission at the hearing by stating, ". . . I don't have anything, or cannot see anything at this junction [sic] that would grant further attorney's fees on top of what the court ordered." Doc. #131. Defendant concludes that additional fees pursuant to C.C.C. § 1717 are unavailable.

2.

Plaintiff claims that she is not limited to C.C.C. § 1717 and may recover fees under C.C.P. § 1032(a)(4), which allows as allowable costs to include attorney fees when authorized by any of the following: (a) contract; (b) statute; (c) law. Doc. #135. While Plaintiff does not specifically mention C.C.P. § 1021, she cites authority relying on C.C.P. §§ 1021, 1032 and 1033.5 together. Plaintiff further contends that C.C.P. § 685.040 is applicable.

Plaintiff cites the Settlement Agreement, which included the KBR Membership Operating Agreement as "Exhibit 1" for the purposes of characterizing Plaintiff as an "Economic Interest Holder."[7] *See* Docs. #6, Ex. 1, ¶ 1a; #114, Ex. 39. The Operating Agreement provided in Paragraph 13.18:

> **Attorney Fees**. In the event that *any dispute* between the Company and the Members of among the Members should result in litigation or arbitration, the prevailing party in such dispute shall be entitled to recover from the other party all reasonable fees, costs, and expenses of enforcing any right of the prevailing party, including without limitation, reasonable attorneys' fees and expenses, all of which shall be deemed to have accrued upon the commencement of such action and shall be paid whether or not such action is prosecuted to judgment. Any judgment or order entered in such action shall contain a specific provision providing for the recovery of attorney fees and costs incurred in enforcing such judgment and an

[7] Exhibit A to the Operating Agreement defines an "Economic Interest Holder" as "a Person who holds only an Economic Interest in the Company. An Economic Interest Holder shall include an owner of Economic Interest Units to the extent of the ownership of such Economic Interest. Wherever reference is made to a Member in the Membership Operating Agreement such reference shall also be deemed to apply to Economic Interest Holders, except for rights and obligations, such as the right to vote and the right to information concerning the financial condition of the Company, which are exclusive to Members." *Membership Operating Agreement*, Doc. #114, Ex. A to Ex. 39, at 33.

award of prejudgment interest from the date of the breach at the maximum rate of interest allowed by law. For the purposes of this Section 13.18: (a) attorney fees shall include, without limitation, fees incurred in the following: (1) post judgment motions; (2) contempt proceedings; (3) garnishment, levy, and debtor and third party examinations; (4) discovery; and (5) bankruptcy litigation; and (b) prevailing party shall mean the party who is determined in the proceeding to have prevailed or who prevails by dismissal, default or otherwise.

Doc. #114, Ex. 39, at 39, ¶ 13.18.

Defendant was a signatory to the October 15, 2014 Settlement Agreement and was KBR's controlling owner and operating member. Doc. #6, Ex. 1. The Settlement Agreement was filed in the San Diego Action and the San Diego Superior Court used it as a basis for its decision finding that the settlement was procured by fraud and Plaintiff's reliance in the agreement resulted in damages. Doc. #117, RJN-2.

Since the San Diego Superior Court applied California law, which allows the prevailing party to recover attorney fees in litigation in connection with or arising from the agreement, Plaintiff argues that she is entitled to reasonable attorney fees. Doc. #135, citing *Maynard v. BTI Group, Inc.*, 216 Cal. App. 4th 984 (finding that the parties entered into an attorney fee agreement under C.C.P. § 1021 that provided the prevailing party a right to recover costs in any action or proceeding under C.C.P. § 1032(a)(4), which included attorney fees under C.C.P. § 1033.5(a)(10)).

The KBR Operating Agreement Section 13.18 provides for all disputes arising between the parties and specifically included a

provision for bankruptcy litigation. The parties contracted for
the provision, which was in the Operating Agreement and
incorporated by reference into the Settlement Agreement.
Doc. #114, Ex. 39, at 1, ¶ 1.

The Settlement Agreement also contains provisions for
final integration and severability. The final integration
provision provides:

> The full form Agreement *and exhibits referred to
> herein*, constitute the entire final and binding
> understanding between the parties hereto with respect
> to the matters set forth herein and supersedes the
> Stipulation for Settlement dated August 13, 2014. No
> other statement or representation, written or oral,
> express or implied, has been received or relied upon
> in entering into the settlement, and that *all prior*
> discussions, *statements* and negotiations *made or which*
> *have occurred prior to the date of this Agreement*
> *shall be deemed merged into this Agreement and the*
> *documents referred to herein*, and shall not be used
> for any other purpose whatsoever. Each of the
> recitals, titles and headings used in this Agreement
> shall be interpreted and construed as part of the
> Agreement and not as a mere recital.

*Id.*, at 4, ¶ 9a (emphasis added). Per the final integration
clause, the Operating Agreement attached as Exhibit 1 is
integrated and deemed merged into the final Settlement
Agreement.

To incorporate another document into a contract in
California: (1) the reference must be clear and unequivocal;
(2) the reference must be called to the attention of the other
party, and he must consent thereto; (3) the terms of the
incorporated document must be known or easily available to the
contracting parties. *Shaw v. Regents of Univ. of Cal.*, 58 Cal.

App. 4th 44, 54 (1997). But the contract does not need to recite that it incorporates another document, so long as it guides the reader to the incorporated document. *Id.* The reference to the previous agreement here was clearly stated in the Settlement Agreement. The reference was called to both parties' attention in Paragraph 1 and elsewhere. Both parties signed the Settlement Agreement which contained a final integration clause. The previous agreement involved the parties and the parties signed that as well. There was no mystery between the parties what the settlement agreement referenced and incorporated.

Although Defendant has argued that the Settlement Agreement contained no attorney fee provision, there have been no contentions that the Operating Agreement was not incorporated into the Settlement Agreement by reference. Sharonrose Cannistraci consulted in the drafting of the Settlement Agreement that incorporated the Operating Agreement by reference. Doc. #118, RJN-5. Ms. Cannistraci declared that her attorney fees were covered under Paragraph 13.18 for recovery by the prevailing party in an action on dispute among KBR members. *Cf.* Doc. #114, Ex. 39, at 39, ¶ 13.18. The San Diego Superior Court subsequently awarded attorney fees. Though the court did not specify the basis upon which it awarded fees, it considered Plaintiff's written declarations, testimony, and other evidence in issuing its judgment, which included the declaration of Ms. Cannistraci. Doc. #117, RJN-2. Therefore, Paragraph 13.18 of the Operating Agreement was incorporated by reference into the Settlement Agreement, which the court used to award Plaintiff's attorney fees.

The San Diego Superior Court rescinded Plaintiff's obligations under Paragraph 1(a) through (c) under the Settlement Agreement, but this did not affect incorporation of the Operating Agreement by reference in Paragraph 1. Doc. #117, RJN-2. The Settlement Agreement also contained a severability clause, which provides:

> <u>Severability</u>. In the event that any provision of this Agreement should be held to be void, voidable or unenforceable, the remaining portions hereof shall remain in full force and effect.

*Id.*, at 5, ¶ 13. Per the severability clause, the remaining portions of the agreement shall remain in full force and effect.

This case arises out of a contract that incorporates as an exhibit an attorney fees provisions that references contract and other disputes. Defendant signed the agreement and falsely promised to comply with the terms of the agreement when he had no intention of doing so. The provision in 13.18 is intertwined with the settlement agreement, so recovery of attorney fees is available under C.C.P. § 1021.

Although Defendant argues that this is not a dischargeability action based on a contract for which attorney fees are to be awarded, Plaintiff asserts that she would be entitled and was entitled in the state court action for the attorney fees. Paragraph 13.18 broadly encompasses the nature of the dispute here as between members of KBR.

Further, Plaintiff cites to *Phillips v. Gilman (In re Gilman)*, 603 B.R. 437 (B.A.P. 9th Cir. 2019). In *Phillips*, the court reviewed whether a successfully prosecuted adversary proceeding to deny a debtor's discharge warranted an award of

attorney fees. *Id.*, at 440. The court examined C.C.P. § 685.040, as well as C.C.P. § 108(c), and noted that recovery of post-judgment attorney fees is available based on the California Enforcement of Judgments Act, C.C.P. §§ 685.040, 685.080. *Id.*, at 441, citing *Carnes v. Zamani*, 488 F.3d 1057, 1060 (9th Cir. 2007) (finding that post-judgment attorney fees under C.C.P. § 685.040 must comply with the timeliness requirements of C.C.P. § 685.080).

Plaintiff argues that C.C.P. § 685.040 allows her to be reimbursed her costs of enforcing the judgment because the underlying judgment includes an award of attorney's fees under C.C.P. § 1033.5(a)(10), which permits attorney fees to be allowable costs under C.C.P. § 1032. Plaintiff again offers to further move for reasonable fees under Rule 7054(b)(2)(A).

Plaintiff also maintains that she should receive attorney fees on a policy basis because Defendant would receive a "free ride" in the bankruptcy court trying to discharge that which is non-dischargeable. The only way the attorney fees could be deemed non-dischargeable are through the enforcement efforts by Plaintiff. There would be no recourse for Plaintiff seeking to disallow a non-dischargeable debt otherwise. Forgoing attorney fees in this instance would give Defendant a "free ride" for his wrongful conduct. The state court was not going to condone Defendant's conduct without payment to Plaintiff for asserting her rights against Defendant, and the bankruptcy court should do no less since the state court has made the requisite findings and orders.

Thus, Plaintiff argues that she is entitled to recover fees outside of the bankruptcy under state or federal law. The only question is how much. Plaintiff requests a hearing as to the amount of attorney fees she is entitled under Rule 7054(b)(2)(A).

3.

Based on this record, Plaintiff is entitled to attorney fees under C.C.P. §§ 685.040, 1021, 1032, 1033.5. The state court awarded attorney fees under the Settlement Agreement, which incorporates the KBR Operating Agreement by reference in the final integration clause. The Operating Agreement, meanwhile, broadly awards "reasonable fees, costs, and expenses" to "the prevailing party" in "any dispute between the Company and the Members" that results in litigation or arbitration, including "reasonable attorneys' fees and expenses." Doc. #114, Ex. 39, at 39, ¶ 13.18. Attorney fees specifically includes fees incurred in bankruptcy proceedings and the prevailing party is defined as "the party who is determined in the proceeding to have prevailed or who prevails by dismissal, default or otherwise." *Ibid.*

The San Diego Superior Court did not include a specific provision in its ruling regarding attorney fees. However, the Superior Court did state that the basis for their award of attorney fees was the Settlement Agreement. From there, the Operating Agreement is incorporated by reference, which includes the requisite basis for an award of attorney fees.

The court finds that that Plaintiff is entitled to attorney fees under C.C.P. § 1021. As with C.C.P. § 1021, C.C.P. § 685.040 allows attorney fees as costs for judgment creditors under C.C.P. §§ 1032, 1033.5. The fraud judgment is based on the Settlement Agreement. The Settlement Agreement incorporates the Operating Agreement by reference. The Operating Agreement provides for fees, costs, and expenses, with fees specifically defined to include those incurred during bankruptcy litigation. Accordingly, Plaintiff is entitled to fees under C.C.P. § 685.040. The amounts of those fees will be determined later by noticed motion.

CONCLUSION

Plaintiff's motion for summary judgment will be GRANTED as to the preclusive effect of the state court judgment.

The San Diego County Superior Court's amended judgment dated February 8, 2019, awarding $8,813.21 in damages, $997.26 in pre-judgment interest, $34,000.00 in attorney fees, and $3,230.71 in costs for a total of $47,041.18, will be deemed non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) under the doctrine of issue preclusion.

Further, the motion will be GRANTED as to additional attorney fees in prosecuting this adversary proceeding. Plaintiff is entitled to attorney fees under C.C.P. §§ 685.040, 1021, 1032(a)(4), and 1033.5(a)(10)(A) under the KBR Operating Agreement, which is incorporated into the Settlement Agreement by reference and was the basis upon which the San Diego Superior Court awarded attorney fees to Plaintiff. As noted above, the

1   specific amounts of those fees and their reasonableness is yet
2   to be determined; the court will determine the amount of
3   attorney fees after a duly noticed hearing. Plaintiff is
4   directed to seasonably file a motion and set for hearing her
5   request for attorney fees with supporting evidence, including
6   copies of her counsel's time records.

7        Plaintiff to prepare the order granting this motion and a
8   separate judgment. The judgment may later be amended to include
9   any allowed attorney's fees following a further hearing on
10  reasonableness of fees.

**Dated:** Jul 09, 2021                    **By the Court**

**René Lastreto II, Judge**
**United States Bankruptcy Court**

**Instructions to Clerk of Court**
**Service List - Not Part of Order/Judgment**

The Clerk of Court is instructed to send the Order/Judgment or other court generated document transmitted herewith to the parties below.  The Clerk of Court will send the Order via the BNC or, if checked ____, via the U.S. mail.

Kenneth Ray Hudson
2000 Ashe Road Unit 3
Bakersfield CA 93309

Glen E. Gates
2445 Capitol Street, Suite 160E
Fresno CA 93721

Ahren A. Tiller
1230 Columbia St #1100
San Diego CA 92101